USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/11/2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

IN RE ACTRADE FINANCIAL : 02 Civ. 1263 (RMB) (HBP)
TECHNOLOGIES, LTD. SECURITIES :
LITIGATION : **OPINION & ORDER**
:
-----------------------------------------------------------X

### I. Background

Before the Court is a motion, filed on April 4, 2012 by the Actrade Liquidation Trust ("Trust") pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking summary judgment on certain counterclaims filed against the Trust on August 2, 2011 by Deloitte & Touche LLP ("Deloitte"). The counterclaims include breach of contract, promissory estoppel, and declaratory relief. (See Deloitte's Countercls., Answer & Defenses, dated Aug. 2, 2011.) The Trust argues, among other things, that (1) the parol evidence rule bars admission of an alleged oral "collateral agreement" entered into between the Trust and the lead plaintiffs in the underlying securities action ("Lead Plaintiffs") in or around August 2010 ("Trust Release Agreement"), in which the Trust allegedly agreed to release its claims against Deloitte, and that a settlement agreement entered into between Lead Plaintiffs and the Trust on August 30, 2010 ("Trust Settlement Agreement") "preserves all claims against [Deloitte]," is "clear and unambiguous," and contains a merger clause; (2) Deloitte "is not entitled to promissory estoppel as there is no promise to enforce," and there could have been no reasonable reliance because the Trust Settlement Agreement preserved all claims against Deloitte; and (3) Deloitte "is not entitled to declaratory relief because . . . [it] lacks third-party standing to bring its underlying claims." (Mem. of Law in Supp. of Trust's Mot. for Summ. J., dated Apr. 2, 2012 ("Trust Mem."), at 9, 10, 11, 21, 23–24.)

On May 2, 2012, Deloitte filed an opposition arguing, among other things, that (1) there is an exception to the parol evidence rule for collateral agreements, and "there are disputed issues of material fact as to whether the [Trust] Release Agreement is an enforceable collateral agreement"; (2) there is ample evidence in the record that the Trust promised to grant Deloitte a release if requested to do so as part of a settlement of the underlying securities action between Deloitte and Lead Plaintiffs, and Deloitte "reasonably relied on this promise in pursuing months of settlement discussions with Lead Plaintiffs"; and (3) Deloitte is the "express intended beneficiary" of the Trust Release Agreement and "properly seeks a declaration of its rights as a third-party beneficiary." (Deloitte's Mem. of Law in Opp'n to the Trust's Mot. for Summ. J. on the Countercls., dated May 2, 2012 ("Deloitte Opp'n"), at 14, 23–25.)

On May 16, 2012, the Trust filed a reply. (See Reply Mem. of Law in Further Supp. of the Trust's Mot for Summ. J., dated May 16, 2012.) The parties waived oral argument.

The following facts are undisputed.

In or around October 2004, the parties entered into a "Proposed Global Settlement" to settle all of the claims among them in the underlying securities action and in the parallel bankruptcy proceeding of Actrade Financial Technologies, Ltd. and Actrade Capital Inc. (collectively, "Actrade") in the United States Bankruptcy Court for the Southern District of New York. (Deloitte's Resp. to the Trust's Statement of Undisputed Facts, dated May 2, 2012 ("Deloitte 56.1 Resp."), ¶ 15.) And, on March 10, 2005, the Trust filed a motion for approval of the Proposed Global Settlement in the Bankruptcy Court. (Deloitte 56.1 Resp. ¶ 18.)

On November 6, 2008, the Trust apparently reversed course and requested that the Bankruptcy Court disapprove the Proposed Global Settlement because of "new information" of "a massive fraudulent scheme orchestrated by" Actrade's former Chairman, Amos Aharoni

("Aharoni").  (Deloitte 56.1 Resp. ¶ 20.)  By letter to Deloitte, dated December 9, 2008, the Trust stated in relevant part as follows:

> This letter will confirm that it is also the Trustee's intent, were the Bankruptcy Court not to approve the [Proposed Global Settlement], to negotiate in good faith for [] a [m]odified [s]ettlement and that the Trustee anticipates that any such [m]odified [s]ettlement, like the [Proposed Global Settlement], will include a mutual release of claims between the Trustee (for the Actrade bankruptcy estates) and Deloitte.

(Decl. of Michelle Zolnoski, dated Apr. 2, 2012 ("Zolnoski Decl."), Ex. DDD.)  On December 16, 2008, United States Bankruptcy Judge Allan L. Gropper issued a bench ruling disapproving the Proposed Global Settlement.  (See Hr'g Tr., dated Dec. 16, 2008, at 49–52 (THE COURT: "[E]vidence has been uncovered in recent months that Aharoni lied to the trustee or his predecessor, and that Aharoni misappropriated up to $31 million of funds . . . . This Court cannot find that the settlement reaches the level of reasonableness required under [Fed. R. Bankr. P.] 9019.").)

On January 22, 2010, this Court affirmed Judge Gropper's December 16, 2008 ruling. See In re Actrade Fin. Techs. Ltd., Nos. 09 Civ. 4479, 4480 (S.D.N.Y. Jan. 22, 2010).

In or around April 2010, Lead Plaintiffs and the Trust began negotiating a new settlement.  (Deloitte 56.1 Resp. ¶ 31.)  By July 2010, they had begun exchanging draft agreements, and by email dated August 5, 2010, Lead Plaintiffs' counsel, Thomas Shapiro ("Shapiro"), wrote to the Trust's then-counsel, Patrick Salisbury ("Salisbury"), in relevant part as follows:

> I also want to confirm your advice to me that the Trust is not proceeding against Deloitte.  I would like an understanding that the Trust will give Deloitte a release if it requests one as a condition of settling the Class claim.

3

(Zolnoski Decl. Ex. X; see Deloitte 56.1 Resp. ¶¶ 32–40.)  By reply email, dated August 5, 2010 ("August 5, 2010 Email"), Salisbury stated in relevant part as follows:

> The Trust has reserved its claims against Deloitte but conf[i]rms that it will grant a release as part of a settlement on the basis we have discussed.

(Zolnoski Decl. Ex. X.)  On August 30, 2010, Lead Plaintiffs and the Trust entered into the Trust Settlement Agreement in which Lead Plaintiffs agreed to withdraw their Proof of Claim against the Trust in the Bankruptcy Court in exchange for the provision of information by the Trust about Deloitte's audits of Actrade.  (See Zolnoski Decl. Ex. O; Deloitte 56.1 Resp. ¶ 55.)

On April 14, 2011, Lead Plaintiffs and Defendants reached an agreement to settle the underlying securities action conditioned upon, among other things, the Trust granting a release to Deloitte.  (Deloitte 56.1 Resp. ¶ 72.)  On September 13, 2010, the Trust terminated the services of Salisbury and his law firm because they "may have engaged in billing improprieties."  (Decl. of Jay B. Kasner, dated May 2, 2012 ("Kasner Decl."), Ex. 23.)  By letter to the Court, dated May 25, 2011, Salisbury stated that the Trust would not grant a release to Deloitte except "on terms acceptable to the Trust" and that he is "not counsel to the Trust on this matter as the Trust has retained separate counsel."  (Zolnoski Decl. Ex. CC.)

On June 30, 2011, the Trust, represented by new counsel Bernstein Liebhard LLP, filed a complaint against Deloitte in Delaware State Superior Court for professional malpractice. (Deloitte 56.1 Resp. ¶¶ 75, 80, 81, 83.)  That action was removed to federal court on July 29, 2011, and it was transferred to the United States District Court for the Southern District of New York on October 6, 2011.  See Meer v. Deloitte & Touche LLP, No. 11 Civ. 6994 (S.D.N.Y.), ECF Nos. 1, 16. On April 17, 2012, United States District Judge Lewis A. Kaplan stayed that action pending resolution of this motion.  See id., ECF No. 36.

**For the reasons set forth below, the Trust's motion for summary judgment is denied.**

## II.     Legal Standard

Under New York law, "certain oral collateral agreements, even though made contemporaneously, are not within the prohibition of the parol evidence rule because if they are separate, independent, and complete contracts, although relating to the same subject, they are allowed to be proved by parol, because they were made by parol." Lee v. Joseph E. Seagram & Sons, Inc., 552 F.2d 447, 451 (2d Cir. 1977) (internal quotation marks and alterations omitted). Summary judgment is improper where "there exist genuine issues of material fact with respect to whether the parties reached an oral agreement." Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 577 (2d Cir. 1993).

Where resolution of a contract dispute "hinges on such extrinsic matters as the credibility of witnesses or documents or upon choosing one among several reasonable inferences that may be drawn from such extrinsic evidence, a jury, and not a court, should decide what meaning is to be ascribed to the contract." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 148–49 (2d Cir. 1993).

"An intended third party beneficiary will be found when it is appropriate to recognize a right to performance in the third party and the circumstances indicate that the promisee intends to give the third party the benefit of the promised performance." Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 573 (2d Cir. 1991).

**III.     Analysis**

**(1)     Collateral Agreement**

The Trust argues that the Trust Release Agreement "fails to form a complete [collateral] agreement" because it lacks "consideration, mutual assent, and an intent to be bound." (Trust Mem. at 12.)  The Trust also argues that the Trust Release Agreement "directly contradicts" the provision(s) preserving claims against Deloitte contained in the Trust Settlement Agreement and was "merged therein." (Trust Mem. at 16–17.)  Deloitte counters that "the consideration for the [Trust] Release Agreement was Lead Plaintiffs' willingness to accept the [Trust] Settlement Agreement," and that the question of whether there was mutual assent and intent to be bound requires resolution of "disputed interpretations of numerous e-mails, letters and other documents . . . which cannot be done on a motion for summary judgment." (Deloitte Opp'n at 3–4, 15.)  Deloitte also argues that whether the two agreements are "complementary" and/or cover "distinct subject matters within the larger context of a two-step global settlement" is a "fact-intensive analysis that is not conducive to resolution" on summary judgment. (Deloitte Opp'n at 19, 22.)

Under New York law, "an oral agreement can be treated as separate and independent of the written agreement even though the written contract contains a strong integration clause." Lee, 552 F.2d at 451–52.  Evidence of a collateral agreement is admissible as an exception to the parol evidence rule when three conditions are met: "(1) The agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing." Gem Corrugated Box Corp. v. Nat'l Kraft Container Corp., 427 F.2d 499, 502 (2d Cir. 1970) (internal quotation marks omitted).  "[A] court should be slow to deny enforcement if it is convinced that

the parties themselves meant to make a contract and to bind themselves to render a future performance." Lee, 552 F.2d at 453 (internal quotation marks omitted).

As to the first factor, material issues of fact exist as to whether there was a collateral agreement. See id. at 454. For example, there are issues concerning whether the consideration for the Trust Release Agreement was Lead Plaintiffs' entry into the Trust Settlement Agreement. See id. The Trust contends that Lead Plaintiffs gave no consideration for the Trust Release Agreement "separate and apart from that given to the Trust in the [Trust] Settlement Agreement." (Trust Mem. at 16.) Deloitte contends that "[t]here is no way [Lead Plaintiffs] would have entered into the settlement with the Trust if there was any notion that the Trust might reserve the right to sue Deloitte, as that would eliminate any chance of a settlement with Deloitte." (Deloitte Opp'n at 15 (quoting Zolnoski Decl. Ex. S.).)

Also with respect to the first factor, material issues of fact exist as to whether there was mutual assent and an intent to be bound to the Trust Release Agreement. See Lee, 552 F.2d at 453. The Trust contends that there was no mutual understanding with respect to "the parties being released" or the "scope of the release," and there was no intent to be bound because a release is "usually committed to a formal writing." (Trust Mem. at 12, 15.) Deloitte contends that the release applies to "Deloitte globally" (Deloitte Opp'n at 17), and a reasonable jury could determine the scope of the release broadly by reference to extrinsic evidence such as the parties' settlement discussions and the (failed) Proposed Global Settlement. Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 548 N.E.2d 203, 206 (N.Y. 1989) ("Before rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear."). Deloitte also contends that "[t]he fact that the release would be incorporated into a written agreement

7

does not demonstrate a lack of intent to bind the Trust" in light of the parties' objective to implement a "two-step settlement." (Deloitte Opp'n at 18–19); see Barry v. Liddle, O'Connor, Finkelstein & Robinson, 98 F.3d 36, 40 (2d Cir. 1996).

With respect to the second and third factors, material issues of fact also exist as to whether the Trust Release Agreement "contradict[s]" the Trust Settlement Agreement and/or would "ordinarily be expected to [be] embod[ied]" in it. Gem, 427 F.2d at 502; see Scherer v. Kane, 284 F. App'x 850, 853 (2d Cir. 2008). Section B.9 of the Trust Settlement Agreement provides that "[n]othing in this Agreement shall operate to release, discharge or otherwise adversely affect any Claims of the Trust as against Aharoni, any of the other Defendants, or any other person or entity." (Zolnoski Decl. Ex. O.) The August 5, 2010 Email states that "[t]he Trust has reserved its claims against Deloitte but conf[i]rms that it will grant a release as part of a settlement on the basis we have discussed." (Zolnoski Decl. Ex. X.) A jury would need to determine whether these two agreements are consistent in the context of, among other things, the parties' settlement discussions. See Scherer, 284 F. App'x at 853; Lee, 552 F.2d at 452.

**(2)     Promissory Estoppel**

The Trust argues that Deloitte "cannot establish the existence of an unambiguous promise" and that there could not have been reasonable reliance by Deloitte because the Trust Settlement Agreement "disclaims reliance on any promises and representations" not contained therein. (Trust Mem. at 21–22.) Deloitte argues that there is ample evidence in the record that the Trust promised to grant Deloitte a release if requested to do so as part of a settlement of the underlying securities action between Deloitte and Lead Plaintiffs, and that Deloitte "reasonably relied on this promise in pursuing months of settlement discussions with Lead Plaintiffs." (Deloitte Opp'n at 24.)

8

Under New York law, a claim for promissory estoppel requires "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc., 804 F.2d 787, 793 (2d Cir. 1986).

Material issues of fact exist as to whether the Trust made a clear and unambiguous promise to release its claims against Deloitte. See id. The Trust contends that the Trust Release Agreement is "vague and undefined," and that Deloitte "merely relied on [attorney] Shapiro's self-serving statements that he 'could obtain that release.'" (Trust Mem. at 22.) Deloitte contends that the Trust "promised to grant [Deloitte] a release" and "knew, or should have known, that its promise . . . would be communicated to [Deloitte] during settlement discussions." (Deloitte Opp'n at 24.)

Material issues of fact also exist as to whether Deloitte reasonably relied on any promise by the Trust. See Esquire Radio, 804 F.2d at 793. The Trust contends that there could have been no reasonable reliance because the Trust Settlement Agreement "preserves the Trust's claims against [Deloitte] and disclaims reliance on any promises and representations not set forth" therein. (Trust Mem. at 21.) Deloitte contends that there was reasonable reliance given the parties' "two-step settlement" objective in which Lead Plaintiffs would first settle with the Trust, and then "the Trust was to allow Lead Plaintiffs to negotiate a favorable settlement of the [underlying] [a]ction with Deloitte." (Deloitte Opp'n at 19, 24.)[1]

---

[1] While the Trust does not address the issue of "injury," it appears that a reasonable jury could conclude that Deloitte may have been injured pursuing "months of settlement negotiations" in reliance on the Trust Release Agreement. (Deloitte Opp'n at 24); see Esquire Radio, 804 F.2d at 793.

### (3) Declaratory Relief

The Trust argues that there is no "actual controversy" because Deloitte "lacks third-party standing to bring its underlying claims." (Trust Mem. at 24.) Deloitte argues that it is the "express intended beneficiary" of the Trust Release Agreement and "properly seeks a declaration of its rights as a third-party beneficiary." (Deloitte Opp'n at 23–24.)

"Under New York law, an intended third-party beneficiary has standing to enforce an agreement entered into between others." Solutia Inc. v. FMC Corp., 385 F. Supp. 2d 324, 336 (S.D.N.Y. 2005). A third party is a beneficiary when "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC, 11-4306-CV, -- F.3d --, 2012 WL 3156441, at *8 (2d Cir. Aug. 6, 2012). The benefit to the third party must be "sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit was lost." Id. (internal quotation marks omitted).

Material issues of fact exist as to whether the Trust Release Agreement was intended to benefit Deloitte and whether any benefit was "sufficiently immediate, rather than incidental." Id. The Trust contends that everything attorney Shapiro did was for the benefit of the Class, and that any benefit to Deloitte was "incidental." (Trust Mem. at 20.) Deloitte contends that the Trust Release Agreement "is expressly designed to provide a release to [Deloitte]" and that Shapiro's purpose "was to help 'both' Deloitte and the [C]lass." (Deloitte Opp'n at 23); see Levin v. Tiber Holding Corp., 277 F.3d 243, 249 (2d Cir. 2002).

10

Because a reasonable jury could conclude that Deloitte may have been an intended third-party beneficiary to the Trust Release Agreement, it has standing to seek declaratory relief. See Solutia, 385 F. Supp. 2d at 336.

## IV.  Conclusion

For the foregoing reasons, the Trust's motion for summary judgment [#167] is denied. A settlement/scheduling conference with principals is scheduled for September 27, 2012 at 9:00 a.m. The parties are directed to engage in good faith settlement negotiations prior to the conference.

Dated: New York, New York
       September 11, 2012

*RMB*

**RICHARD M. BERMAN, U.S.D.J.**